# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-036V
### (Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *      Special Master Corcoran
DAWN E. AMANKWAA and                          *
BENJAMIN S. EDWARDS, parents and              *
natural guardians of B.M.A, a minor,          *
                                              *      Filed: January 5, 2018
             Petitioners,                     *
                                              *      Interim Attorney's Fees and Costs;
      v.                                      *      Reasonable Basis.
                                              *
SECRETARY OF HEALTH                           *
AND HUMAN SERVICES,                           *
                                              *
             Respondent.                      *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Robert Joel Krakow*, Law Office of Robert J. Krakow, P.C, New York, NY, for Petitioners.

*Kathryn Ann Robinette*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART INTERIM AWARD OF ATTORNEY'S FEES AND COSTS[1]

On January 9, 2017, Dawn Amankwaa and Benjamin Edwards filed a petition on behalf of their son, B.M.A., seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] based upon allegations that he suffered from a demyelinating brain injury, nerve damage, trigeminal neuralgia, and other neurological and developmental injuries, as a result of receiving vaccines on January 10, 2014, February 12, 2014, and April 17, 2014. Petition ("Pet.") at 1-2 (ECF No. 1).

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

After reviewing Respondent's Rule 4(c) Report and independently evaluating the medical records, I expressed to Petitioners my view that their claim (which closely resembles the kind of autism injury claims alleged unsuccessfully many times over in the Vaccine Program was very unlikely to succeed, and thus lacked reasonable basis to go forward. *See* Scheduling Order, dated Aug. 22, 2017 (ECF No. 20) ("August Order"). I therefore invited the Petitioners to evaluate how they wanted to proceed. In response, present counsel requested that he be permitted to move to withdraw from the action, and I informed him I would act on such a motion in conjunction with any fees request he might make for work performed during the case's pendency. Scheduling Order, dated October 12, 2017 (ECF No. 23).

Petitioners filed the present fees motion on October 28, 2017, with counsel's motion to withdraw following two days later. *See* Motion for Attorney Fees, filed Oct. 28, 2017 ("Fees App.") (ECF No. 25); Motion to Withdraw, dated Oct. 30, 2017 (ECF No. 26). Petitioners specifically request fees and costs in the total amount of $25,011.58 (representing $24,266.25 in attorney's fees, and $745.33 for costs incurred). *See* Fees App. at 11; Ex. 19-5 to Reply, dated Nov. 21, 2017 (ECF No. 30-1).[3]

Respondent initially reacted to the motion on November 6, 2017, deferring to my discretion as to whether Petitioners have met the legal standards for an interim fees and costs award. *See* Response, filed Nov. 6, 2017 (ECF No. 27) at 3. But not long thereafter, Respondent filed an amended response on November 8, 2017, contesting Petitioners' fee request in its entirety on reasonable basis grounds, in light of an intervening Federal Circuit decision. *See Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632 (Fed. Cir. 2017); Revised Response, dated Nov. 8, 2017 (ECF No. 29) ("Opp."). I permitted Petitioners the opportunity to reply to Respondent's new arguments in opposition to the fees request, and they did so on November 21, 2017. *See* Reply, dated Nov. 21, 2017 (ECF No. 30) ("Reply"). The disputed fees request is now fully briefed and ripe for resolution.

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's Motion, awarding attorney's fees and costs in the total amount of **$11,543.83** (representing $10,798.50 in attorney fees, and $745.33 in costs).

### *Brief Factual Summation*

B.M.A. was born at full term via vaginal delivery on December 31, 2012. Ex. 9. He displayed no developmental problems at his twelve-month well-child pediatric visit on January 10, 2014, at which time he received some of the vaccines alleged in this case to have been causal of his injuries (the Measles-Mumps-Rubella, varicella, Hepatitis A, and influenza ("flu") vaccines). Ex. 1 at 40. He

---

[3] Petitioner's Reply requests an additional $7,003.50 in attorney's fees incurred in preparation of the Reply.

had, however, experienced a fall down a flight of stairs on November 7, 2013, when he was ten months old – hence before the first vaccinations at issue. Ex. 13 at 34-38.

B.M.A. received a second flu vaccine dose in February 2014, and then the DTaP, HiB, IPV, and pneumococcal conjugate vaccines in April 2014. Ex. 1 at 42, Ex. 11 at 15. The medical records from this period reveal no notable concerns about his condition or development, and report no post-vaccine reactions. By July 2014, however, the Petitioners were reporting to pediatric treaters concerns about B.M.A.'s development, and he was not long thereafter referred for an autism evaluation. Ex. 1 at 41, 43. It appears from the records that B.M.A. did not receive that evaluation until September 2014, at which time early intervention was recommended for physical and speech therapy. Ex. 10 at 28-35.

In February 2015 (more than a year after the first vaccinations at issue), Petitioners brought B.M.A. back to his pediatrician expressing concerns about behavioral issues that they reported to have first observed after his November 2013 fall down the stairs. Ex. 1 at 22. That same month, Petitioners brought B.M.A. to a hospital for evaluation of what they feared might have been a seizure, and at this time EEG and MRI testing was performed. Ex. 2 at 5, 41, 51. Although the EEG revealed no epileptic events, the brain MRI revealed possible white matter brain cell damage typical of demyelination. *Id.* at 5, 8. However, a neurodevelopmental specialist cast doubt on the possibility that B.M.A. suffered from a demyelinating disease, given certain facts gleaned about his medical history. *Id.* at 49.

B.M.A. continued to receive treatment in 2015 for his developmental problems and possible demyelinating disease, although specialists expressed doubt that he suffered from a white matter demyelinating disease in spite of the earlier MRI findings, or that his developmental problems were otherwise attributable to a neurodegenerative condition. *See, e.g.,* Ex. 8 at 3-4, 8-9. However, by the end of 2015, a different specialist proposed B.M.A. might be suffering from a trigeminal neuralgia[4], given facial pain his parents reported him to be experiencing, and prescribed medication for its treatment. Ex. 11 at 67-68.

In May 2016, B.M.A. underwent an MRI of the brain due to concern for right-sided trigeminal neuralgia, but it revealed no evidence of neurovascular conflict and produced a stable white matter signal. Ex. 17 at 204. B.M.A. thereafter underwent a surgical procedure to treat nerve compression in his cranium likely causing his trigeminal neuralgia. *Id.* at 121, 145.

Importantly, there is no evidence in the medical records in which a treater links B.M.A.'s vaccinations to either his developmental problems or his trigeminal neuralgia, or links the two in any

---

[4] Trigeminal neuralgia is characterized by severe, episodic pain in the area of the head supplied by the trigeminal (fifth cranial) nerve. *Dorland's Illustrated Medical Dictionary* 1262, 1966 (32d ed. 2012).

other way. In addition, and despite some evidence suggesting the possibility of a white matter demyelinating condition, overall treater opinions contained in the medical record do not support that conclusion, and it is otherwise undeniable that B.M.A. was never so diagnosed.

### *Procedural History*

This action has been pending for just under a year, having been filed on January 9, 2017. Pet. at 1. As the billing invoices submitted in support of the fees application reveal, however, Petitioners' attorney, Robert Krakow, Esq., began working on the matter on December 30, 2016, *eleven* days before filing. *See* Ex. 19, Tab 2 to Fees App. (ECF No. 25-2) at 1. Because B.M.A. received the first round of vaccines relevant to his claim on January 10, 2014, the earliest possible limitations cutoff for the claim was January 10, 2017.[5] Thus, from the start of his involvement in the case, Mr. Krakow was under some time pressure to evaluate its merits.

Mr. Krakow began reviewing medical records in late December 2016, and continued until the filing of the Joint Statement of Completion on May 30, 2017. ECF No. 17. However, the majority of exhibits in the case (Exhibits 1-10) were filed a day after the case's initiation. ECF No. 5. Respondent filed his Rule 4(c) Report on August 14, 2017, after one extension of time. ECF No. 19. According to the billing invoices, Mr. Krakow specifically reviewed records related to demyelination on December 31, 2016, and immunization, pediatric history, and neurological history documents on January 1, 2017, but then received and reviewed additional records a few months later, in March-April 2017 (specifically, Exhibits 11-18). *See* Ex. 2 to Fees App. at 1, 4-6. However, it appears from the billing records that counsel was aware that demyelination was an important issue from the start. *Id.* at 1 (referencing December 31, 2016 "email to client with questions about dysmyelination [sic] and trigeminal neuralgia").

As noted above, a telephonic status conference was held on August 21, 2017 (seven months after filing), during which I raised questions regarding the overall viability of Petitioners' claim. I noted to Petitioners in particular the fact that although they alleged that B.M.A. had experienced some kind of neurologic injury in connection with the vaccination he had received, the medical record did not reflect any complaints of such injury before or congruent with the discovery of B.M.A.'s developmental problems. August Order at 1. I have ruled in several cases alleging an autism injury that claims of a vaccine reaction (for example, in the form of parent complaints of an infant's post-vaccination condition) uncorroborated by record proof of that reaction are not credible (putting aside the more significant problems posed by the causation theories in these cases). *See, e.g., Anderson v. Sec'y of Health & Human Servs.*, No. 02-1314V, 2016 WL 8256278 (Fed. Cl. Spec. Mstr. Nov. 1, 2016), *mot. for review den'd*, 131 Fed. Cl. 7135 (2017), *appeal docketed*, No. 17-2209 (Fed. Cir. Nov.

---

[5] *See* Section 16(a)(2). Careful Program counsel often make sure to file a claim no later than three years from the date of *administration* of the vaccine at issue, even though the statute runs from the onset of symptoms (whether or not they are recognized at the time as such.)

1, 2016); *R.V. v. Sec'y of Health & Human Servs*., No. 08-504V, 2016 WL 3882519 (Fed. Cl. Spec. Mstr. Feb. 19, 2016), *mot. for review den'd*, 127 Fed. Cl. 136 (2016), *appeal dismissed,* No. 16-2400 (Fed. Cir. Oct. 26, 2016).

I thus informed Petitioners and their counsel that in my view the claim lacked reasonable basis going forward. August Order at 2. The next month, counsel filed a motion to withdraw, along with the request for interim fees presently before me.

### Fees Request and Revised Opposition

Petitioners maintain that they had reasonable basis to prosecute their claim until at least August 21, 2017 - the date of the conference preceding my August Order, and first time I expressed concerns about reasonable basis to the parties. Fees App. at 16.[6] They otherwise argue that the requested hourly rates are reasonable, and that an interim award is appropriate on the occasion of an attorney's withdrawal from a case. *Id.* at 11-13.

In reacting to the fees request, Respondent originally deferred to my discretion in resolving it, but then amended his response in light of the Federal Circuit decision in *Simmons*. *See* Ex. 1 to Opp. Specifically, Respondent reasoned that according to *Simmons*, a looming statute of limitations deadline does not provide a reasonable basis for Petitioner's claim, and therefore cannot excuse the filing of this case. Opp. at 1. Rather, for the reasons set forth in the Rule 4(c) Report, and my Orders entered on August 22, 2017, and October 12, 2017, Petitioners have failed to establish a reasonable basis for the claim, and therefore no fees should be awarded. *Id.* at 1-2.

In their Reply, Petitioners argue that Respondent's position wholly ignores the relevant factors that must be considered in the objective evaluation of a reasonable basis determination, and also misinterprets the *Simmons* decision. Reply at 2. Petitioners' counsel maintains that the present case is "starkly distinguishable" from *Simmons*, arguing that reasonable basis existed based upon counsel's review of a significant, although incomplete, set of medical records prior to the filing of the Petition. *Id.* at 13-14. In particular, Petitioners propose that a complete review of medical records was necessary due to the suggestion of white matter demyelination as a potential vaccine-induced cause for B.M.A.'s symptoms. But counsel did not have the benefit of such a review before filing; in fact records of the May 2016 MRI critical to this aspect of Petitioners' theory were not in counsel's possession until April of this year, almost three months after the case's initiation. *Id.* at 7. Petitioners also assert that even if onset of B.M.A.'s symptoms was deemed to have occurred sometime after his April 2014 vaccinations, a timeframe of up to five months for the start of the alleged demyelination (which was first observed in February 2015 but in Petitioners' view likely began before) has medical

---

[6] However, in my August Order I noted that this determination applied only to work going forward on the matter. As I therein stated, I would separately determine if reasonable basis had ended *sooner*, based on consideration of the totality of the circumstances, including counsel's history in working on the case (the evidence for which was not then before me). August Order at n. 2.

support. *Id.* at 17-18.

## Analysis

### I.      **Reasonable Basis**

#### A.      *Relevant Legal Standards*

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis"[7] sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances." The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate whether the totality of the circumstances warrant a finding that reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017 WL 4546579, at *10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id*. at *5. An impending statute of limitations deadline may also play a role in a reasonable basis determination as well. *Id*. at *10.

The even more recent Federal Circuit *Simmons* opinion, however, casts doubt on the weight to be given to the statute of limitations factor under the "totality of the circumstances" analysis. The claimant in *Simmons* informed his counsel (whom he contacted in August 2011) that he had developed Guillain-Barré syndrome ("GBS") after receiving the flu vaccine on October 26, 2010. *Simmons*, 875 F.3d at 634. Counsel thereafter did not contact the claimant for two years, but then the claimant resurfaced in October 2013 (not long before the Act's three-year limitations period was likely to

---

[7]Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

expire on the claim) and expressed the desire to pursue the claim. Counsel accordingly filed the case, based solely on the claimant's assertions – but without corroborating documentary proof, despite the two-year period that had passed since the claim's filing. *Id.*

The *Simmons* claim was dismissed for failure to prosecute, but the special master responsible for the case granted a request for attorney's fees, finding special significance in the fact that counsel had had ethical obligations to protect the claim by filing it before it was time barred, even if its objective basis had not been fully vetted. *Simmons*, 875 F.3d at 635. On review, the Court of Federal Claims disagreed, and the Federal Circuit affirmed. In so doing, the Federal Circuit stated that "whether there is a looming statute of limitations deadline, . . . has *no bearing* on whether this is a reasonable factual basis for the claim raised in the petition." *Id.* at 636 (emphasis added). But that determination also took into account several facts, including that (a) the *Simmons* claimant had never offered any objective proof that he had experienced GBS, despite ample time to do so, and (b) instead, the claimant relied *solely* on the need to act in the face of the limitations period expiration. *Id.* Accordingly, "because the special master *only* found that there was a reasonable basis for [the claim] because of the impending statute of limitations deadline," the award of fees constituted a misapplication of the law, and was a reversible abuse of discretion. *Id.* (emphasis added).

*Simmons* is thus best understood to hold that the pending expiration of the Act's limitations period is *by itself* not grounds for a reasonable basis finding, as it does not constitute objective evidence in support of the claim. But *Simmons* does not expressly (or even impliedly) abrogate the "totality of the circumstances" test – and therefore does not mean that the circumstances informing an attorney's investigation of a claim's basis (including the fact that an attorney may have insufficient time to complete that investigation due to the need to file a claim expeditiously) are irrelevant. Rather, it emphasizes the need for petitioners to locate objective proof supporting a claim – an inquiry that can take time, as recognized in other decisions observing that claims can possess reasonable basis but then "lose" it later after additional facts are adduced. *See, e.g., Curran v. Sec'y of Health & Human Servs.*, No. 15-804V, 2017 WL 1718791, at * 3 (Fed. Cl. Spec. Mstr. Mar. 24, 2017), *aff'd in part and remanded on other grounds*, 130 Fed. Cl. 1 (2017); *Pannick v. Sec'y of Health & Human Servs.*, No. 16-0510V, 2016 WL 8376894, at *2 (Fed. Cl. Spec. Mstr. Nov. 8, 2016). The fact that an attorney may have not completed analysis of a claim's viability before filing, thus, matters less than *how long* the attorney has to do so – and, critically, *when* it is just and fair to say that attorney should have known the case lacked objective basis.

B. Reasonable Basis Existed in this Case until January 31, 2017.

I am not persuaded by Respondent's argument that the case's lack of reasonable basis should have been determined in the short time counsel had before its filing due to the limitations cutoff. Respondent's reading of *Simmons*—completely ruling out as irrelevant the fact that counsel must act expeditiously to evade the impact of a pending limitations cutoff—is admittedly consistent with

certain language contained in the decision, but ignores the facts of the *Simmons* case that produced that outcome, i.e. where no objective proof supporting the claim was ever offered. The circumstances here are far different. The fact of B.M.A.'s injury was established by those records in his immediate possession, as was proof of vaccination. *See* Ex. 1 (ECF No. 5-1) at 11, 22, 40; Ex. 9 (ECF No. 5-9) at 3; Ex. 11 (ECF No. 10-1) at 15, 69-71; Ex. 2 to Fees App. at 1-2. And Petitioner's counsel *did* begin to evaluate the records and consider the claim's strengths before its filing, but lacked sufficient time (or record evidence) to complete that process. Thus, unlike *Simmons*, this case was not one where the claim's feasibility could have been fully vetted prior to filing.[8]

In addition, consideration of the limitations cutoff in performing my "totality of the circumstances" analysis is not inconsistent with the *Simmons* ruling. *Simmons* references the "totality of the circumstances" test, and it has long been understood in the Vaccine Program that this test considers a variety of factors in assessing reasonable basis – including the context in which an attorney evaluates a claim's viability, before and after filing. *See, e.g.*, *Allicock*, 2016 WL 3571906, at *4-5, *Gonzalez*, 2015 WL 10435023, at *5-6; *Cortez*, 2014 WL 1604002, at *6. The fact that a pending limitations cutoff impels an attorney to file a claim later revealed to be weak has often been considered one relevant consideration. While *Simmons* clearly states that this cannot be the "sole" factor (since it does not stand as objective evidence supporting the claim – the *sine qua non* of a reasonable basis determination), the Federal Circuit in *Simmons* did not abrogate that test.

Thus, although the inquiry into the validity of Petitioners' claim herein was not completed before the time to file arrived[9], the claim possessed far more objective support before it was filed than in *Simmons*, and therefore the Federal Circuit's holding therein does not support a determination that Petitioners' claim lacked reasonable basis at the outset.

This does not mean, however, that these same facts do not also militate against a full award of attorney's fees through August 2017, as requested by Petitioners. Well-reasoned decisions have noted that even cases that begin with reasonable basis can lose it over time, once more evidence comes in that reveals a claim's weaknesses. *See, e.g., Pannick*, 2016 WL 8376894, at *2. I have ruled that reasonable basis ceased to exist for certain claims that initially had it for this very reason. *See, e.g., Curran*, 2017 WL 1718791; *see also Fieselman v. Sec'y of Health & Human Servs.*, No. 17-170V, 2017 WL 5398625 (Fed. Cl. Spec. Mstr. Sept. 14, 2017); *Butler v. Sec'y of Health & Human Servs.*,

---

[8] The inherent weakness of a claim alleging an autism or autism-like developmental injury caused by a vaccine has some bearing on the reasonable basis analysis, as discussed below. But special masters should take care in conflating a claim's likelihood of success with its reasonable basis – just as they should not find that the fact that a claim was unsuccessful means the claim lacked objective support at its outset.

[9] Indeed – if the scope of inquiry is widened, and takes into account the vaccinations B.M.A. received in February and April, *Simmons* has even less relevance, as Petitioners' causation theory could arguably have ignored the January vaccinations as causal – thereby eliminating the need to act in the face of the statute entirely.

No. 16-1620V, 2017 WL 3811134 (Fed. Cl. Spec. Mstr. Aug. 3, 2017).

The billing invoices offered in support of the present fees motion demonstrate that counsel filed this claim without the benefit of a full review of the record. The record counsel did possess, however, reveals numerous facial deficiencies with Petitioners' claims – all of which should have been warning signals as to the claim's viability. For instance, Petitioners allege that B.M.A. suffered from a "brain injury manifesting as demyelination, nerve damage, trigeminal neuralgia, and other neurological injuries." Pet. at 1-2. However, the medical records generally support diagnoses related to an autism spectrum disorder and trigeminal neuralgia only – and there is no record support linking either to any vaccination B.M.A. received. *See* Ex. 11 (ECF No. 10-1) at 69-71. There are also numerous instances in which Petitioners informed treaters that they observed B.M.A.'s developmental problems to have manifested as a result of his November 2013 fall, and thus *before* he received the January 2014 vaccines. Ex. 1 (ECF No. 5-1) at 22.

The records counsel possessed at the time of filing do raise the issue of demyelination (Ex. 2 (ECF No. 5-2) at 8), but it does not appear that B.M.A. was ever diagnosed with a demyelinating condition or that testing would support such a diagnosis. And although Petitioners stated that B.M.A. began to exhibit symptoms in the spring and summer of 2014, the medical records indicate that he did not present to a physician with relevant complaints associated with his trigeminal neuralgia until February 2015, almost a year from the April 2014 vaccinations. Ex. 1 (ECF No. 5-1) at 22. Thus, even if records that counsel lacked at the outset of the case might have helped him better understand the claim's possible issues, counsel had more than enough to know that the claim was going to be very difficult to prosecute successfully.

The timeline revealed by the invoices submitted with this fees application bulwarks the conclusion that the claim's reasonable basis could have been determined long before August 2017. Mr. Krakow possessed Exhibits 1-10 (367 pages) prior to the filing of the case, gaining additional records in March-April 2017. *See* Ex. 2 to Fees App. at 1-2. But Mr. Krakow could have assessed the claim's significant deficiencies *without* those additional records (even if the additional records received in March 2017 shed some light on the trigeminal neuralgia diagnoses). Furthermore, Mr. Krakow *did* have in the initial records evidence of the alleged white matter demyelination (or lack thereof). Regardless, the documents Petitioners now cite as supporting their allegations of causation facially do not support their claim. The billing records reveal that Mr. Krakow devoted 18.15 attorney hours to file review before the end of January – more than enough time to determine the case's deficiencies, regardless of how complete the record was at this time. The fact that the case was filed due to the looming limitations cut-off should have encouraged counsel to act promptly, given the risk the claim would prove to lack objective proof. *Curran*, 2017 WL 1718791, at *3 (counsel filing a Vaccine Act claim right before limitations cut-off must act immediately thereafter to fully vet the claim's objective basis).

9

A final and significant consideration is the autism/developmental nature of the injury alleged. Claims alleging that vaccines cause autism have failed repeatedly, as reflected in the decisions rendered in the Omnibus Autism Proceedings (the "OAP") as well as those thereafter, and Petitioners offered no medical or scientific evidence to suggest this claim would be the one to result in a different outcome.[10] The special masters have been applying heightened scrutiny to any newly-filed autism injury cases (given the countless ones previously, and unsuccessfully, litigated), and often encourage petitioners asserting such claims to dismiss because of the high likelihood that the claim will fail, resulting in a waste of judicial resources. Having represented many such claimants in the past, Mr. Krakow was on notice that a similar claim would be so received, even if it was styled as a variation on the theme. *See, e.g., R.V.*, 2016 WL 3882519; *Mette v. Sec'y of Health & Human Servs.*, No. 08-284V, 2015 WL 9804877 (Fed. Cl. Spec. Mstr. Dec. 21, 2015), *mot. for review den'd,* No. 08-284V (Fed. Cl. June 30, 2017).

Given all of the above, this claim's lack of reasonable basis should have been determined far sooner. Indeed, the deficiencies revealed by the medical records in counsel's possession at the time of filing could be determined in a day's review (a timeframe that special masters often are forced to adhere to in becoming conversant with a case). ECF No. 1-10. I also dispute the asserted need for an expert to weigh in on the strength of the claim. Again, Mr. Krakow's experience with this very kind of alleged vaccine injury (having represented petitioners in many entitlement hearings involving autism) suggests he possessed sufficient expertise to at least assess the overall *legal* viability of the claim.

Accordingly, even if counsel were justified, due to the looming statute of limitations cutoff, in filing the claim before he had completed a full review of the record, once the case was filed it was incumbent upon him to perform and complete that review *immediately*, obtaining as quickly as possible any documents necessary for that inquiry. I therefore find that reasonable basis for this claim ended January 31, 2017, by which time it should have been clear to Petitioners that the claim lacked objective support. I will not award any hours of attorney or paralegal work performed following that date (with the exception of costs relevant to winding down the case and preparing it for dismissal, including some of the costs associated with preparing the Reply). *See Curran*, 2017 WL 1718791, at *3-4 (awarding modest fees associated with winding down the case).

My ruling herein is, if anything, generous to the Petitioners and their counsel. Should the same counsel file another autism injury claim in which its deficiencies are as self-evident in the records

---

[10] Other special masters have invoked reasonable basis as a justification for dramatically cutting back fees requests in unsuccessful autism cases even where the claims were tried, in whole or part. *See, e.g., Hardy v. Sec'y of Health & Human Servs.*, No. 08–108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (awarding less than $8,000 of request for approximately $41,000 in fees and costs in autism claim that was tried, where special master determined case lacked reasonable basis despite trial); *Hashi v. Sec'y of Health & Human Servs.,* No. 08–307V, 2016 WL 5092917 (Fed. Cl. Spec. Mstr. Aug. 25, 2016) (awarding less than half of request for approximately $31,000 in fees and costs in unsuccessful autism case, based on lack of reasonable basis).

initially possessed, I am not likely to allow any fee award at all.

## II.    Calculating Amount of Interim Award

Because I have determined that the matter possessed reasonable basis for some period of its existence, I must now evaluate what amount of award is proper. As a threshold matter, I find that the circumstances of Mr. Krakow's withdrawal from the case do justify an interim award.[11] *See Greene v. Sec'y of Health & Human Servs.*, No. 11-631V, 2016 WL 8136295, at *1 (Fed. Cl. Spec. Mstr. Dec. 13, 2016); *see also Edmonds v. Sec'y of Health & Human Servs*., No. 04-87V, 2012 WL 1229149, at *11 (Fed. Cl. Spec. Mstr. Mar. 22, 2012) (withdrawal of counsel may not alone provide the basis for an interim award, but is considered a relevant factor); *Lumsden v. Sec'y of Health & Human Servs*., No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012); *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013).

Whether a fee award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). Special masters may in their discretion reduce attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended[12] on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48

---

[11] In my prior decisions, I have discussed at length the standards applicable to determining whether to award fees on an interim basis (here meaning while the case is still pending). *Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701, at *6-9 (Fed. Cl. Spec. Mstr. May 20, 2016); *Al-Uffi v. Sec'y of Health & Human Servs.,* No. 13-956V, 2015 WL 6181669, at *5-9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). It is well-established that a decision on entitlement is not required before interim fees or costs may be awarded. *Fester v. Sec'y of Health & Human Servs*., No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013); *see also Cloer v. Sec'y of Health and Human Servs*., 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Avera*, 515 F.3d at 1352. While there is no presumption of entitlement to interim fees and cost awards, special masters may in their discretion make such awards, and often do so. *Perreira v. Sec'y of Health & Human Servs*., 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Requests for interim costs are subject to the same standards. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Fester*, 2013 WL 5367670, at *16.

[12] An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs*., No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at

11

(quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

Petitioners ask that Mr. Krakow and paralegals who worked on this matter be reimbursed at varying rates for work performed from 2016-2017, as detailed above ($425 per hour for Mr. Krakow for work completed in 2016, and $435 per hour for work in 2017; and $125 per hour, with an increase to $140 per hour, for paralegal work in 2016-2017, respectively). Mr. Krakow's firm, located in New York, has repeatedly been found to be "in-forum" and therefore he is entitled to the forum rates established in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[13] *See, e.g., Laderer v. Sec'y of Health & Human Servs.*, No. 09-097V, 2016 WL 3044838, at *3 (Fed. Cl. Spec. Mstr. Apr. 20, 2016). In addition, Chief Special Master Dorsey has recently awarded the increased rate requested herein for 2017 for Mr. Krakow and his paralegal time (which he sometimes performs but bills at the lower rate). *See Moxley v. Sec'y of Health & Human Servs.*, No. 006-213V, 2017 WL 5080289 (Fed. Cl. Spec. Mstr. Oct. 12, 2017). I find Chief Special Master Dorsey's reasoning to be persuasive, and therefore the requested rates will be awarded.

In light of my reasonable basis determination, however, I will make an adjustment to the time awarded for attorney services. As mentioned above, I will not award any hours of attorney or paralegal work performed after January 31, 2017 (with the exception of costs relevant to winding down the case and preparing it for dismissal, plus some of the costs associated with preparation of the Reply, as requested therein)[14]. This results in an award of 15 hours for attorney work and 7.5 hours for paralegal work in 2016-2017—representing an elimination of 18.95 hours of attorney work and 10.9 hours of paralegal work. I will award Petitioners' counsel additional hours work completed during

205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used for the lodestar calculation. *Avera*, 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). This "Davis" exception is inapplicable here, however, because I have previously found the attorneys in question should receive forum rates.

[13] The *McCulloch* forum rate ranges have been compiled into a list and posted to the Vaccine Claims section of the United States Court of Federal Claim website. The forum hourly rate fee schedule can be accessed at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Hourly Rate Chart").

[14] Petitioner requests an additional $7,003.50 for 16.10 hours of work on the Reply in this matter, addressing Respondent's two-page response in light of the Federal Circuit decision in *Simmons*. *See* Ex. 19-5 to Reply, dated Nov. 21, 2017 (ECF No. 30-1). However, I will award Petitioner only an additional $2,000.00 for this work; a 25-page document was not required to respond to a two-page opposition.

this time period, however (representing three hours for wind-down costs, plus an additional $2,000.00 for work incurred in responding to Respondent's amended opposition in light of the intervening Federal Circuit decision in *Simmons*). *See* Ex. 19-5 to Reply at 2.

Therefore, I will compensate Petitioners and their counsel for 18 hours of attorney work (including the three-hour increase added to Mr. Krakow's fee award), the additional $2,000.00 awarded for work associated with the Reply, and 7.5 hours of paralegal work representing pre-January 31, 2017, work plus wind-down costs. This amounts to a total of $10,798.50 (representing $9,801.00 in attorney fees and $997.50 in paralegal fees) -- a total fees reduction of $13,467.75.[15] These reductions are in keeping with the "rough justice" I am empowered to effect when making fees awards in the Program, in order to account for the unnecessary time devoted to this matter.

Petitioners' requested costs include reimbursement for the filing fee, mailing and postage costs, and costs associated with obtaining medical records. *See* Ex. 19, Tab 2 to Fees App. at 9. These costs are reasonable and will be reimbursed in full. Therefore, I will award a total of $745.33 in costs.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$11,543.83** (representing $10,798.50 in attorney fees, and $745.33 in costs) as a lump sum in the form of a check jointly payable to Petitioners and their counsel, Robert Krakow, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[16]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[15] The attorney fees and paralegal fees are calculated using two different fee rates for 2016-2017. For the attorney fees, 2.9 hours are awarded at a rate of $425 per hour and the remaining 15.1 hours are awarded at a rate of $435 per hour. For the paralegal fees, 3.5 hours are awarded at a rate of $125 per hour and the remaining 4.0 hours are awarded at a rate of $140 per hour.

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' filing of a joint notice not to seek review.