# In the United States Court of Federal Claims

No. 17-36V
(Filed: June 4, 2018)
(Reissued for Publication: June 19, 2018)[1]

```
*****************************************
DAWN E. AMANKWAA and BENJAMIN       *
S. EDWARDS, parents and natural guardians *
of BMA, a minor,                    *
                                    *
                  Petitioners,      *     Vaccine Act; Attorneys' Fees; Reasonable
                                    *     Basis for Petitioners' Claim; Impending
v.                                  *     Statutory Limitations Deadline; Simmons
                                    *
SECRETARY OF HEALTH AND HUMAN       *
SERVICES,                           *
                                    *
                  Respondent.       *
*****************************************
```

Robert J. Krakow, New York, NY, for petitioners.

Voris E. Johnson, Jr., United States Department of Justice, Washington, DC, for respondent.

**OPINION AND ORDER**

**SWEENEY**, Judge

Petitioners Dawn E. Amankwaa and Benjamin S. Edwards seek compensation under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 300aa-1 to -34 (2012), alleging that their son, BMA, sustained vaccine-related injuries. After the special master advised petitioners of his position that there was no reasonable basis for them to proceed with their claim, their attorney, Robert J. Krakow, filed a motion to withdraw as petitioners' counsel of record and a motion for an award of interim attorneys' fees. Over respondent's objection, the special master awarded petitioners interim attorneys' fees for some of the work performed by Mr. Krakow. Before the court is respondent's motion for review of the special master's decision. For the reasons set forth below, the court grants respondent's motion and reverses the special master's award of interim attorneys' fees.

---

[1] Vaccine Rule 18(b), contained in Appendix B of the Rules of the United States Court of Federal Claims, affords each party fourteen days in which to object to the disclosure of (1) trade secrets or commercial or financial information that is privileged or confidential or (2) medical information that would constitute "a clearly unwarranted invasion of privacy." Neither party objected to the public disclosure of any information contained in this opinion.

## I. BACKGROUND

### A. BMA's Medical History

BMA's medical history, which is undisputed by the parties, can be briefly summarized.[2] BMA was born on December 31, 2012, and did not display any developmental problems at his one-year well-child visit on January 10, 2014. During that visit, BMA received measles-mumps-rubella, varicella, hepatitis A, and influenza vaccines. BMA received a second dose of the influenza vaccine in February 2014, and four more vaccines in April 2014–diphtheria-tetanus-acellular pertussis, haemophilus influenzae type b, inactivated polio virus, and pneumococcal conjugate.

By July 2014, petitioners had begun to express concern regarding BMA's development to his pediatric treaters. BMA was referred for an autism evaluation, and in September 2014, he was recommended to undergo physical and speech therapy.

In February 2015, petitioners brought BMA to his pediatrician to report behavioral issues that they first observed after BMA fell down a flight of stairs in November 2013. Also in February 2015, petitioners brought BMA to the emergency room to be evaluated following a suspected seizure. A brain MRI revealed possible white matter damage that is typical of demyelination,[3] but a neurodevelopment specialist expressed doubt that BMA suffered from a demyelinating disease due to his medical history.

Although BMA was treated for his developmental issues and a possible demyelinating disease through 2015, specialists remained doubtful that BMA suffered from a white matter demyelinating disease or that BMA's developmental issues were attributable to a neurodegenerative disease. Eventually, by the end of 2015, one specialist suggested that in light

---

[2] The court derives most of BMA's medical history and the case's procedural history from the special master's decision awarding interim attorneys' fees. See generally Amankwaa v. Sec'y of HHS, No. 17-36V, 2018 WL 1125853 (Fed. Cl. Spec. Mstr. Jan. 5, 2018). It derives the remainder of the medical and procedural history from the case's docket.

[3] Demyelination is the "destruction, removal, or loss of the myelin sheath of a nerve or nerves." Demyelination, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

of petitioners' report of BMA experiencing facial pain,[4] BMA might have been suffering from trigeminal neuralgia.[5] BMA was prescribed medication to treat that condition.

In May 2016, BMA had another brain MRI, which revealed no evidence of a neurovascular conflict and a stable white matter signal. BMA subsequently underwent a surgical procedure to treat the nerve compression that was likely causing his trigeminal neuralgia.

BMA's medical records contain no evidence that any of his treaters linked his vaccinations to his developmental issues or his trigeminal neuralgia. Those records further reveal that BMA was never diagnosed with a white matter demyelinating disease.

### B. Procedural History

Under the Vaccine Act, a petition for compensation for a vaccine-related injury must be filed within "36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C. § 300aa-16(a)(2). According to his billing records, petitioners' counsel, Mr. Krakow, began working on this case on December 30, 2016, nearly three years after BMA received the first of the vaccines at issue.[6] Of particular note, Mr. Krakow reviewed medical records related to demyelination and asked petitioners questions concerning dysmyelination on December 31, 2016,[7] and reviewed medical records related to BMA's vaccinations, pediatric history, and neurological history on January 1, 2017. Mr. Krakow ultimately filed a petition for compensation on petitioners' behalf on January 9, 2017, in which petitioners allege that BMA "suffered from a demyelinating brain injury, nerve damage, trigeminal neuralgia, and other neurological and developmental injuries" as a result of his January, February, and April 2014 vaccinations. Amankwaa, 2018 WL 1125853, at *1. The

---

[4] Petitioners allege that in the spring and summer of 2014, BMA "began to show symptoms of discomfort including head pain, which became apparent because [BMA] would hold his head, rub his eyes and cry." Pet. ¶ 6. The first report of this facial pain in BMA's medical records appears to be in the notes from a March 25, 2015 office visit with a pediatric neurologist. See Pet'rs' Ex. 8 at 1 ("There have been episodes where he cries, rubs his eyes and intermittently holds his head which parents have been interpreting as headaches.").

[5] Trigeminal neuralgia is "severe, episodic pain in the area supplied by the trigeminal nerve"–i.e., the fifth cranial nerve–"often precipitated by stimulation of well-defined trigger points." Trigeminal Neuralgia, Dorland's Illustrated Medical Dictionary, supra note 3.

[6] Although the statute of limitations does not begin to run on the date of vaccination, the special master explained that "[c]areful [Vaccine] Program counsel often make sure to file a claim no later than three years from the date of administration of the vaccine at issue, even though the statute runs from the onset of symptoms (whether or not they are recognized at the time as such.)[.]" Amankwaa, 2018 WL 1125853, at *3 n.5.

[7] In contrast with demyelination, dysmyelination is the "breakdown or defective formation of a myelin sheath, usually involving biochemical abnormalities." Dysmyelination, Dorland's Illustrated Medical Dictionary, supra note 3.

following day, Mr. Krakow filed exhibits 1 through 10 in support of the petition. He then filed additional exhibits–exhibits 11 through 18–in March and April 2017.

After all of the relevant medical records had been filed, respondent filed the report required by Vaccine Rule 4(c) on August 14, 2017. In that report, respondent remarked that BMA's medical records only supported diagnoses of autism spectrum disorder and trigeminal neuralgia, averred that petitioners had not provided any evidence that those conditions were caused by BMA's vaccinations, and disputed that petitioners' claim had a reasonable basis. One week later, on August 21, 2017, the special master conducted a telephonic status conference with the parties during which he "raised questions regarding the overall viability of Petitioners' claim." Id. at *3. In particular, he noted that although petitioners "alleged that B.M.A. had experienced some kind of neurologic injury in connection with the vaccination he had received, the medical record did not reflect any complaints of such injury before or congruent with the discovery of B.M.A.'s developmental problems." Id. He therefore "informed Petitioners and their counsel that in [his] view the claim lacked reasonable basis going forward." Id. at *4.

Eventually, in late October 2017, Mr. Krakow filed a motion for interim attorneys' fees ("fee application") and a motion to withdraw as counsel of record. Under the Vaccine Act, petitioners who fail to establish entitlement to compensation for a vaccine-related injury or death may still recover attorneys' fees if the special master "determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e). Thus, in his fee application, Mr. Krakow asserted that petitioners had a reasonable basis to pursue their claim until at least August 21, 2017, when the special master first questioned the claim's viability.[8]

Although respondent initially did not object to the fee application, he later filed an amended response in which he argued–based on the decision by the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in Simmons v. Secretary of HHS, 875 F.3d 632 (Fed. Cir. 2017)–that petitioners lacked a reasonable basis for their claim, precluding an award of attorneys' fees. In Simmons, the Federal Circuit held that "[w]hether there is a looming statute of limitations deadline . . . has no bearing on whether there is a reasonable factual basis 'for the claim' raised in the petition." Id. at 636. Consequently, respondent argued, the fact that petitioners were facing the possible expiration of the Vaccine Act's three-year limitations period did not provide them with a reasonable basis for their claim.

In his January 5, 2018 decision, the special master concluded that an award of interim attorneys' fees was appropriate. In so ruling, the special master distinguished the facts of this case from those in Simmons and found, upon examining the totality of the circumstances, that there was a reasonable basis for petitioners' claim when they filed their petition. The special master further held that petitioners should have realized that their claim lacked a reasonable basis soon after they filed their petition, and therefore concluded that their claim lacked a reasonable basis after January 31, 2017.

---

[8] There is no dispute that petitioners brought their petition in good faith.

Respondent timely filed a motion for review of the special master's decision on January 31, 2018, to which petitioners responded on March 2, 2018.  The court deems oral argument unnecessary.

## II.  DISCUSSION

The United States Court of Federal Claims ("Court of Federal Claims") has jurisdiction to review the record of the proceedings before a special master, and upon such review, may:

>   (A)  uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
>   (B)  set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
>   (C)  remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2).  The standards set forth in § 300aa-12(e)(2)(B) "vary in application as well as degree of deference. . . . Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard."  Munn v. Sec'y of HHS, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

In his motion for review, respondent enumerates a single objection to the special master's decision:

> The special master erred as a matter of law when he found, in effect, that petitioners' claim was supported by a "reasonable basis" solely due to the fact that it was filed to evade the expiration of the statutory limitations period, in direct contravention of the Federal Circuit's recent Opinion in Simmons . . . .

Mot. 1.

### A.  Legal Standard

As noted above, under the Vaccine Act, petitioners who fail to establish entitlement to compensation for a vaccine-related injury or death may still recover attorneys' fees if the special master "determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e).  The "good faith" and "reasonable basis" factors are distinct; the former is subjective while the latter is objective.  Simmons, 875 F.3d at 635.

The determinations of whether a petition is brought in good faith and whether there is a reasonable basis for the claim set forth in the petition are within the special master's discretion.

See Saxton v. Sec'y of HHS, 3 F.3d 1517, 1520 (Fed. Cir. 1993) ("The determination of the amount of reasonable attorneys' fees is within the special master's discretion.  If the petition for compensation is denied, the special master 'may' award reasonable fees and costs if the petition was brought in good faith and upon a reasonable basis; the statute clearly gives him discretion over whether to make such an award." (citation omitted)); accord Simmons, 875 F.3d at 636 (concluding that the special master abused her discretion in finding that an "impending statute of limitations deadline" can be used to establish a reasonable basis for a claim).  Thus, the Court of Federal Claims normally reviews such decisions under the abuse-of-discretion standard.  See Hendler v. United States, 952 F.2d 1364, 1380 (Fed. Cir. 1991) ("An abuse of discretion may be found when (1) the court's decision is clearly unreasonable, arbitrary, or fanciful; (2) the decision is based on an erroneous conclusion of the law; (3) the court's findings are clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision.").  However, if a party alleges that the special master's decision conflicts with binding precedent, then the Court of Federal Claims performs a de novo review under the not-in-accordance-with-law standard.  See Rodriguez v. Sec'y of HHS, 632 F.3d 1381, 1384 (Fed. Cir. 2011) ("'Not in accordance with the law' refers to the application of the wrong legal standard, and the application of the law is reviewed de novo.").

### B. The Special Master Erred in Determining That Petitioners' Claim Had a Reasonable Basis

In his memorandum in support of his motion for review, respondent argues that the special master erred, as a matter of law, in disregarding the ruling in Simmons that "[w]hether there is a looming statute of limitations deadline . . . has no bearing on whether there is a reasonable factual basis 'for the claim' raised in the petition."  Respondent contends that the special master used the impending statutory limitations deadline to find that petitioners' claim had a reasonable basis, and should have instead "evaluate[d] the record to determine whether it contained objective evidence supporting the essential elements of petitioners' claim."  Mem. 9.  Had the special master done so, respondent asserts, he would have found that there was no reasonable basis for petitioners' claim because the record lacked any objective evidence that BMA's conditions were caused by his vaccinations.  Petitioners, for their part, contend that respondent misinterprets both the Simmons decision and the decision of the special master, but even if respondent's interpretation of the Simmons decision is correct, there was a reasonable basis for their claim "because there is sufficient evidence to support the feasibility of the claim made in the Petition . . . ."  Resp. 10.

#### 1. Simmons

To resolve respondent's motion for review, the court must first examine the effect that the Federal Circuit's decision in Simmons had on how special masters determine whether there is a reasonable basis for a claim under the Vaccine Act.

Prior to the Simmons decision, the Court of Federal Claims generally endorsed the use of a totality-of-the-circumstances analysis to determine whether there was a reasonable basis for a claim.  See Cottingham v. Sec'y of HHS, 134 Fed. Cl. 567, 574 (2017).  Specifically, special masters were expected to "consider the circumstances under which the petition is filed, any

jurisdictional questions, the factual basis and medical support for the petition, and any other legal issues that may arise." Id. at 574-75; see also id. at 574 (observing that special masters have the "discretion to consider multiple potentially relevant circumstances–such as the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim–in assessing whether a Vaccine Act claim has a reasonable basis"). Further, "[t]his totality of the circumstances assessment [was to] take into account evidence available at the time a claim is filed and evidence that becomes available as the case progresses." Id. at 575.

In Simmons, the Federal Circuit concluded that the special master erred in finding that there was a reasonable basis for the petitioner's claim. 875 F.3d at 634-36. The petitioner "first contacted counsel in August 2011, claiming that he developed Guillain-Barre Syndrome ('GBS') as a result of his October 26, 2010 flu vaccination." Id. at 634. Thereafter, counsel was unable to reach the petitioner and, consequently, sent the petitioner a letter in March 2013 terminating the attorney-client relationship. Id. Seven months later, on October 17, 2013, the petitioner contacted counsel and expressed his interest in pursuing his claim. Id. After speaking with the petitioner again on October 21, 2013, counsel filed a petition for compensation. Id. The petition, however, was not filed with "any medical records or other supporting evidence showing that [the petitioner] had been diagnosed with GBS." Id. In January 2014, counsel advised the special master that he had again lost contact with the petitioner and was unable to produce any medical records, leading to the dismissal of the case for failure to prosecute. Id. Counsel then sought an award of attorneys' fees. Id. The special master granted the request upon finding that the petition had been filed in good faith and that there was a reasonable basis for the petitioner's claim. Id. The reasonable-basis finding was based on the following:

> [The Petitioner] "provided Counsel with a vaccination receipt"; "after consulting with Petitioner, Counsel judged the claim potentially meritorious"; and "[w]hile that alone may not have provided a reasonable basis for filing a claim, Petitioner then disappeared for almost two years and reemerged less than ten days before the statute of limitations expired" at which point "[t]o not file a petition . . . would be tantamount to an ethical violation."

Id. (quoting Simmons v. Sec'y of HHS, No. 13-825V, 2016 WL 2621070, at *3 (Fed. Cl. Spec. Mstr. Apr. 14, 2016)).

On review, the Court of Federal Claims reversed the special master's determination that there was a reasonable basis for the petitioner's claim. Id. The petitioner appealed that decision to the Federal Circuit, arguing that the special master's decision should be upheld. Id. at 635. The respondent, on the other hand, argued that the special master's analysis was

> improper because "by considering [the] attorney's conduct as part of the reasonable basis assessment, [the special master] folded the subjective good faith provision into the reasonable basis requirement, and effectively either rendered the 'good faith' language [in § 300aa–15(e)(1)] superfluous, or the 'reasonable basis' language meaningless." According to the government, "a looming statute of limitations may excuse an attorney's ethical duty to investigate a claim prior to

-7-

filing a Vaccine Act petition, but that does not create a reasonable basis for the claim in the petition."

Id. (citations omitted).  The Federal Circuit "agree[d] with the government's argument," holding:

> Whether there is a looming statute of limitations deadline . . . has no bearing on whether there is a reasonable factual basis "for the claim" raised in the petition. That is an objective inquiry unrelated to counsel's conduct.  Although an impending statute of limitations deadline may relate to whether "the petition was brought in good faith" by counsel, the deadline does not provide a reasonable basis for the merits of the petitioner's claim.

Id.; accord id. at 636 ("[C]ounsel may not use this impending statute of limitations deadline to establish a reasonable basis for [the petitioner's] claim.").  It therefore concluded:  "Because the special master only found that there was a reasonable basis for [the petitioner's] claim because of the impending statute of limitations deadline, . . . she abused her discretion by misapplying the law."  Id. at 636.

The special master in this case explained his understanding of the effect that the Simmons decision had on reasonable-basis determinations:

> Simmons is . . . best understood to hold that the pending expiration of the [Vaccine] Act's limitations period is by itself not grounds for a reasonable basis finding, as it does not constitute objective evidence in support of the claim.  But Simmons does not expressly (or even impliedly) abrogate the "totality of the circumstances" test–and therefore does not mean that the circumstances informing an attorney's investigation of a claim's basis (including the fact that an attorney may have insufficient time to complete that investigation due to the need to file a claim expeditiously) are irrelevant.  Rather, it emphasizes the need for petitioners to locate objective proof supporting a claim–an inquiry that can take time, as recognized in other decisions observing that claims can possess reasonable basis but then "lose" it later after additional facts are adduced.  The fact that an attorney may have not completed analysis of a claim's viability before filing, thus, matters less than how long the attorney has to do so–and, critically, when it is just and fair to say that attorney should have known the case lacked objective basis.
>
> . . . .
>
> [C]onsideration of the limitations cutoff in performing my "totality of the circumstances" analysis is not inconsistent with the Simmons ruling.  Simmons references the "totality of the circumstances" test, and it has long been understood in the Vaccine Program that this test considers a variety of factors in assessing reasonable basis–including the context in which an attorney evaluates a claim's viability, before and after filing.  The fact that a pending limitations cutoff impels an attorney to file a claim later revealed to be weak has often been considered one relevant consideration.  While Simmons clearly states that this cannot be the

"sole" factor (since it does not stand as objective evidence supporting the claim–
the sine qua non of a reasonable basis determination), the Federal Circuit in
Simmons did not abrogate that test.

Amankwaa, 2018 WL 1125853, at *5-6 (citations omitted).

The court finds that the special master's understanding of the Simmons decision is flawed. First, the Federal Circuit explicitly stated that determining whether there is a reasonable basis for a claim "is an objective inquiry unrelated to counsel's conduct." Simmons, 875 F.3d at 636. In other words, the efforts that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period has no bearing on whether there is a reasonable basis for the claim itself; rather, such efforts are properly evaluated in determining whether a petition was brought in good faith. Second, the Federal Circuit did not suggest that an impending statutory limitations deadline could be considered in determining whether there is a reasonable basis for a claim so long as it was one of many factors considered by the special master. Although Simmons concerned a situation in which the special master's sole ground for finding a reasonable basis for the claim was the impending statutory limitations deadline, there is nothing in the Federal Circuit's decision that indicates that had the special master also grounded her reasonable-basis determination on other, objective factors, her consideration of the impending statutory limitations deadline would have been proper. Rather, the Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines–and all conduct of counsel–in determining whether there was a reasonable basis for a claim.

Of course, the elimination of statutory limitations deadlines and the conduct of counsel as factors that can be considered to determine whether there is a reasonable basis for a claim does not preclude special masters from considering a variety of other factors in their reasonable-basis determinations. Indeed, their analyses may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation.[9] See also Santacroce v. Sec'y of HHS, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018) (unpublished decision) ("[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a

---

[9] The relevance of the latter two possible factors to a reasonable-basis inquiry is explained by the court in Cottingham:

> Because Vaccine Act claims may involve state-of-the-art scientific developments, untested theories, and unknown interactions and results, these difficult cases may entail close calls, and the standard for assessing the reasonable basis for a claim should reflect this reality. As the Federal Circuit has noted, "[t]he first time an injury is causally linked with a vaccine often occurs as a result of a successful non-Table petition." So too, "[a] vaccine-related injury . . . is not always clear at the outset."

134 Fed. Cl. at 574 (citations omitted) (quoting, first, Cloer v. Sec'y of HHS, 654 F.3d 1322, 1332 n.4 (Fed. Cir. 2011) (en banc), and, second, Chuisano v. United States, 116 Fed. Cl. 276, 285 (2014)).

petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . . Under the objective standard articulated by the Federal Circuit in Simmons, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted.").

In short, the Simmons decision stands for the proposition that special masters must not consider subjective factors in determining whether a claim has a reasonable basis. The special master's conclusions to the contrary are therefore legally erroneous.

### 2. The Special Master's Reasonable-Basis Determination

In light of this legal error, the court must ascertain the extent to which the special master relied on the impending statutory limitations deadline in determining that petitioners' claim had a reasonable basis.[10] The special master provided the following analysis in determining that petitioners' claim had a reasonable basis at the time the petition was filed:

> I am not persuaded by Respondent's argument that the case's lack of reasonable basis should have been determined in the short time counsel had before its filing due to the limitations cutoff. Respondent's reading of Simmons–completely ruling out as irrelevant the fact that counsel must act expeditiously to evade the impact of a pending limitations cutoff–is admittedly consistent with certain language contained in the decision, but ignores the facts of the Simmons case that produced that outcome, i.e. where no objective proof supporting the claim was ever offered. The circumstances here are far different. The fact of B.M.A.'s injury was established by those records in [Petitioners' counsel's] immediate possession, as was proof of vaccination. And Petitioner[s'] counsel did begin to evaluate the records and consider the claim's strengths before its filing, but lacked sufficient time (or record evidence) to complete that process. Thus, unlike Simmons, this case was not one where the claim's feasibility could have been fully vetted prior to filing.
>
> . . . .
>
> Thus, although the inquiry into the validity of Petitioners' claim herein was not completed before the time to file arrived, the claim possessed far more objective support before it was filed than in Simmons, and therefore the Federal Circuit's holding therein does not support a determination that Petitioners' claim lacked reasonable basis at the outset.

Amankwaa, 2018 WL 1125853, at *6 (footnotes and citations omitted). Although the special master mentioned two objective factors (proof of vaccination and proof of injury), his conclusion

---

[10] Respondent suggests that there was no looming statutory limitations deadline because the three-year limitations period commences upon the first onset of the injury, rather than upon the date of vaccination. Because the existence of a looming deadline is irrelevant to a reasonable-basis determination, the court need not address this issue.

that petitioners' claim had a reasonable basis hinged on Mr. Krakow lacking sufficient time to fully vet the claim before the statutory limitations deadline.[11] Because the special master was not permitted to consider the press of time in conducting his reasonable-basis analysis, his conclusion that petitioners' claim had a reasonable basis upon the filing of the petition was an abuse of discretion.

The court's conclusion that the special master's reasonable-basis determination depended on the impending statutory limitations deadline is buttressed by the analysis performed by the special master to determine when a reasonable basis for petitioners' claim ceased to exist. In concluding that petitioners lacked a reasonable basis for their claim after January 31, 2017 (in other words, twenty-two days after the petition was filed), the special master commented:

- "The billing invoices . . . demonstrate that counsel filed this claim without the benefit of a full review of the record. The record counsel did possess, however, reveals numerous facial deficiencies with Petitioners' claims–all of which should have been warning signals as to the claim's viability." Id.

- "Thus, even if records that counsel lacked at the outset of the case might have helped him better understand the claim's possible issues, counsel had more than enough to know that the claim was going to be very difficult to prosecute successfully." Id. at *7.

- "The timeline revealed by the invoices submitted with this fees application bulwarks the conclusion that the claim's reasonable basis could have been determined long before August 2017. Mr. Krakow possessed Exhibits 1-10 (367 pages) prior to the filing of the case, gaining additional records in March-April 2017. But Mr. Krakow could have assessed the claim's significant deficiencies without those additional records . . . . [T]he documents Petitioners now cite as supporting their allegations of causation facially do not support their claim." Id. (citation omitted).

- "[T]he deficiencies revealed by the medical records in counsel's possession at the time of filing could be determined in a day's review . . . ." Id. at *8.

All of these statements support a conclusion that Mr. Krakow should have known that petitioners' claim lacked a reasonable basis before the petition was filed.

Moreover, Mr. Krakow's billing records reflect that aside from a twelve-minute period on January 10, 2017 (the day after the petition was filed), Mr. Krakow did not take any action (for example, reviewing newly obtained medical records or consulting experts) through January 31,

---

[11] It also bears noting that the special master did not indicate in his reasonable-basis analysis that petitioners offered evidence (for example, records from BMA's treaters, medical literature, or expert opinion) supporting an essential element of their claim–that the vaccinations received by BMA caused the conditions documented in BMA's medical records.

2017, indicating that he was reviewing the viability of petitioners' claim. See Pet'rs' Ex. 19, Tab 2, at 3-4. Because nothing regarding petitioners' claim changed between January 9, 2017, and January 31, 2017, if the claim had no reasonable basis after January 31, 2017, as the special master held, then it could not have had a reasonable basis at the time the petition was filed.[12]

### III. CONCLUSION

As explained above, the special master erred, as a matter of law, in concluding that the Federal Circuit's decision in Simmons allowed him to consider an impending statutory limitations deadline as part of a totality-of-the-circumstances analysis in determining whether petitioners' claim had a reasonable basis. Further, because the special master's reasonable-basis determination was dependent upon Mr. Krakow's inability to fully assess the viability of petitioners' claim in advance of the impending statutory limitations deadline, his determination that petitioners' claim had a reasonable basis, and that therefore an award of interim attorneys' fees was appropriate, was an abuse of discretion. Accordingly, the court **GRANTS** respondent's motion for review and **REVERSES** the decision of the special master awarding petitioners interim attorneys' fees. Pursuant to Vaccine Rule 30(a), the clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge

---

[12] Although petitioners argue that BMA's medical records reflect that their claim had a reasonable basis when the petition was filed, they do not challenge the special master's conclusion–based, in large part, on the special master's review of all of BMA's medical records–that the reasonable basis ceased to exist after January 31, 2017. Because nothing changed between January 9, 2017 (the date the petition was filed) and January 31, 2017 (the date the special master determined that a reasonable basis for petitioners' claim ceased to exist), the court need not entertain petitioners' contention that their claim initially had a reasonable basis for reasons not stated by the special master. Indeed, petitioners cannot both (1) accept that the evidence indicates that there was no reasonable basis for their claim after January 31, 2017, and (2) argue, relying on the exact same evidence, that there was a reasonable basis for their claim on January 9, 2017.