**REISSUED FOR PUBLICATION**
**NOV 30 2018**
**OSM**
**U.S. COURT OF FEDERAL CLAIMS**

# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-036V
### (not to be published)

* * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| DAWN E. AMANKWAA *and* | * |
| BENJAMIN S. EDWARDS, *parents* | * |
| *and natural guardians of* B.M.A., *a minor,* | * |
|  | * |
| Petitioners, | * |
| v. | * |
|  | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
|  | * |
| Respondent. | * |
|  | * |

Special Master Corcoran

Filed: October 12, 2018

Dismissal of Petition; Vaccine
Act; Denial Without Hearing.

* * * * * * * * * * * * * * * * * * * * * * * * *

*Dawn E. Amankwaa,* pro se, Modesto, CA.

*Voris E. Johnson*, U.S. Dep't of Justice, Washington, D.C. for Respondent.

## DECISION DISMISSING CASE FOR INSUFFICIENT PROOF[1]

On January 9, 2017, Dawn Amankwaa and Benjamin Edwards filed a petition on behalf of their son, B.M.A., seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] based upon allegations that he suffered from a demyelinating brain injury, nerve damage, trigeminal neuralgia, and other neurological and developmental

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

injuries, as a result of receiving vaccines on January 10, 2014, February 12, 2014, and April 17, 2014. Petition ("Pet.") at 1-2 (ECF No. 1).

This matter was transferred to me on February 24, 2017 (ECF No. 9). I held an initial status conference in the case on March 30, 2017. Based on my review of the Petition (in combination with the medical records filed as of that date),[3] I outlined my concerns to Petitioners regarding the claim's overall reasonable basis. I specifically explained to Petitioners that the records suggested that B.M.A. had been diagnosed with autism (or at least that this was a treater concern), but that claims alleging that vaccines can cause autism have repeatedly been unsuccessful in the Vaccine Program. I also noted, however, that Table claims based on a theory of an acute reaction (i.e. encephalopathy close-in-time to vaccine administration) resulting in a neurologic injury could be successful (albeit in rare circumstances).

Despite my concerns, at the conclusion of the conference, I set a deadline of May 31, 2017, for Petitioners to file all relevant medical record evidence supporting their claim. *See* Non-PDF Order, dated March 30, 2017. Petitioners subsequently submitted seven additional sets of records, and the parties filed the Joint Statement of Completion on March 30, 2017 (ECF No. 17). *See* ECF Nos. 10-14, 15-16. Thereafter, Respondent filed his Rule 4(c) Report on August 14, 2017 (ECF No. 19).

After reviewing Respondent's Rule 4(c) Report and independently evaluating the complete medical record, I held an additional status conference on August 21, 2017. Given the existence of numerous other decisions pursuing theories similar to the one proposed herein (involving a claimed injury of developmental regression/autism following vaccination), I reiterated to Petitioners my strongly-held view that the claim likely faced reasonable basis problems given its overall nature. *See* Order, dated August 22, 2017 (ECF No. 20) ("August Order"). I noted that it was highly unlikely that Petitioners could show sufficient grounds for proceeding with this case, as they had produced no evidence to distinguish this case from the many similar claims that had failed to establish entitlement. *Id.* at 1-2. In particular, the record did not support the assertion that B.M.A. experienced any type of reaction to the vaccines he received, or that his developmental regression was more than temporally related to those vaccines. I therefore invited Petitioners to further evaluate their claim and determine how they wished to proceed. *Id.* at 2.

In response, during a third status conference held on October 11, 2017, counsel requested that he be permitted to move to withdraw from the action. I informed counsel that I would act on such a motion in conjunction with any fees request he might make for work performed during the cases' pendency. *See* Scheduling Order, dated October 12, 2017 (ECF No. 23). Ms. Amankwaa

---

[3] Petitioners filed over 300 pages of medical records on January 10, 2017 (including B.M.A.'s birth certificate and records concerning proof of vaccination, well-child visits, and developmental assessments). *See generally* ECF No. 5.

also participated in the conference and expressed a desire to proceed with the claim, despite my concern regarding the claim's viability. *Id.* at 1-2. I thus set a deadline of December 8, 2017, for Petitioners to show cause why their claim should not be dismissed (or request voluntary dismissal of the claim). *Id.* at 2. I invited Respondent to request dismissal if Petitioners indicated they intended to proceed with the claim. *Id.* Counsel thereafter filed a request for fees and a motion to withdraw on October 28, 2017 and October 30, 2017, respectively (ECF Nos. 25-26). Petitioners did not file a response to my October Show Cause Order.[4]

In the interim, on January 5, 2018, I issued a decision awarding Petitioners' counsel a reduced attorney's fees and costs award in light of my reasonable basis concerns. *See Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-36V, 2018 WL 1125853 (Fed. Cl. Spec. Mstr. Jan. 5, 2018). A subsequent decision by the Court of Federal Claims, however, reversed my fees decision, and declined to award Petitioners any fees and costs associated with this matter due to lack of reasonable basis. *See Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282 (2018). Respondent thereafter filed a motion to dismiss on September 21, 2018, requesting that the Court issue a decision dismissing the petition on reasonable basis grounds. *See* Motion to Dismiss, dated Sept. 21, 2018 (ECF No. 43). To date, Petitioners have filed no response to either the motion to dismiss or my October 2017 Show Cause Order (despite roughly one year to do so). The matter is now ripe for adjudication.

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that he suffered a "Table Injury" – i.e., an injury falling within the Vaccine Injury Table – corresponding to one of her vaccinations, or (2) that he suffered an injury that was actually caused by a vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). An examination of the record, however, does not uncover preponderant evidence that B.M.A. suffered a Table injury. Accordingly, Petitioners seek to establish entitlement via a causation-in-fact, non-Table claim - meaning they must meet the test for such a claim set forth by the Federal Circuit in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005).

B.M.A.'s health course has been discussed at length in Respondent's Rule 4(c) Report, as well as my decision concerning attorney's and costs. *See Amankwaa*, 2018 WL 1125853, at *2-4. As noted above, Petitioners allege that B.M.A. suffered from some form of a demyelinating and/or neurologic injury as a result of various vaccines received early in life. However, the medical records filed in the case do not support the contention that B.M.A. suffered a vaccine-induced injury (or any other reaction) close-in-time to the vaccine or thereafter. *See, e.g.*, Ex. 1 at 40 (January 10, 2014 receipt of vaccinations, but making no mention of any reaction); Ex. 11 at 15 (February 2014 visit note indicating receipt of vaccinations, but similarly making no mention of any reaction); Ex. 3 at 1 (March 13, 2014 pediatric visit for URI and otitis media); Ex. 1 at 42 (April 7, 2014 fifteen-month well-visit revealing normal exam); Ex. 1 at 42 (July 11, 2014 pediatric

---

[4] Counsel's motion to withdraw was granted on October 5, 2018 (ECF No. 44).

visit for nasopharyngitis, cough, and possible flu, but making no mention of any vaccine reaction); Ex. 1 at 41, 43 (July 11, 2014 autism referral noting concerns for some behavioral regression, but again making no mention of any causal connection between regression and any vaccination received); Ex. 10 at 28-35 (September 25, 2014 evaluation for behavioral problems recommending early intervention for developmental and feeding concerns); Ex. 1 at 22 (February 20, 2015 pediatric visit noting parents reported concern for behavioral issues beginning pre-vaccination in November 2013 following a fall down the stairs); Ex. 2 at 5, 41, 50 (February 22, 2015 hospital visit noting concern for seizure disorder, but finding no evidence of epileptic event). Admittedly, one record from February 2015 (long after the 2014 vaccinations) indicated that B.M.A.'s MRI imaging revealed some white matter brain cell damage on review, but treaters ultimately doubted B.M.A. suffered from any demyelinating disease given his overall course. *Id.* at 49-50. Moreover, that same record provides no opinion regarding any correlation between B.M.A.'s alleged injury and any vaccination he received.

The remaining records similarly make no mention of any purported vaccine-induced injury, and multiple records refute the contention that B.M.A. experienced any demyelinating injury. *See, e.g.*, Ex. 8 at 3-4 (July 2015 visit assessing B.M.A. for regression with "an autism phenotype"), 9-8 (again noting B.M.A. likely had autism "without clear neurodegenerative diagnosis"); Ex. 16 at 3-6 (April 2015 genetic consultation for regression and developmental decline); Ex. 11 at 67-70 (December 2015 visit noting concern for trigeminal neuralgia given the facial pain parents reported); Ex. 17 at 205 (May 2016 MRI revealing "no neurovascular conflict" and a "stable white matter signal" following evaluation for trigeminal neuralgia). Rather, at best, the records suggest only that B.M.A.'s parents reported a concern for vaccine-induced regression (absent any treater support connecting a vaccination with any subsequent symptoms B.M.A. experienced). Overall, there is no evidence in the medical record in which treaters link B.M.A.'s vaccinations to either of his developmental problems or other diagnoses. Despite some suggestion that B.M.A. may have experienced some form of a demyelinating injury, it is clear from the treater opinions contained in the record that B.M.A. was never affirmatively so diagnosed.

The Court's reversal of my prior fees decision confirms my earlier concerns about the case's lack of reasonable basis. Because the claim has so been found, there are no grounds to proceed with its adjudication despite Petitioners' expressed desire to represent themselves. Petitioners' claim therefore cannot succeed and must be dismissed. Section 11(c)(1)(A).

**Thus, this case is dismissed for insufficient proof. The Clerk shall enter judgment accordingly.[5]**

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite judgment by filing a joint notice renouncing their right to seek review.

**IT IS SO ORDERED.**

Brian H. Corcoran
Special Master